UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL J. ISAACS,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>      Defendant. | No. CV-09-125-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on April 16, 2010 (Ct. Recs. 12,15). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge (Ct. Rec. 5). On March 25, 2010, plaintiff filed a reply (Tr. 17). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).

**JURISDICTION**

Plaintiff applied for supplemental security income (SSI) on June 27, 2005, alleging problems with daily hygiene, low energy, difficulty concentrating, anxiety, depression, and an inability to

ORDER GRANTING DEFENDANT'S
FOR SUMMARY JUDGMENT                                                - 1 -

function normally in social situations (Tr. 77-79,84,99-100). Mr. Isaacs alleges he suffers from major depressive disorder, schizoid personality disorder, and high blood pressure (Tr. 99-100). His application was denied initially and on reconsideration (Tr. 50-52, 53-56).

Hearings were held February 20, 2008, and August 28, 2008, before Administrative Law Judge (ALJ) Paul Gaughen. Plaintiff, represented by counsel, and vocational expert Deborah N. Lapoint testified (Tr. 352-366,369-385). In his decision dated October 22, 2008, the ALJ found at step five plaintiff could perform work other than past work (Tr. 22-33). Because he found Mr. Isaacs could work, the ALJ found plaintiff not disabled as defined by the Act (Tr. 32-33). On February 23, 2009, the Appeals Council denied review (Tr. 3-5). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 22, 2009 (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcripts, the ALJ's decision, the briefs of both parties, and are summarized here.

Mr. Isaacs was 33 years old when he applied for benefits. He graduated from high school. In 1999 he earned a B.A. degree in anthropology (Tr. 122, 377-378). Plaintiff reported taking prescribed medication for depression and high blood pressure. The medication list admitted at the last hearing indicates lists current medications as none (Tr. 84,96,103,121,346).

Mr. Isaacs lives alone (Tr. 133,137) but does not socialize (Tr. 137-138,360-361). He describes himself as sensitive to light and sound; stress makes him angry and aggressive, he has problems falling asleep (Tr. 116,134,139). Daily activities include playing computer games, surfing the internet, reading, listening to music and watching television. Mr. Isaacs prepares easy meals. He occasionally bathes and does laundry (Tr. 134-137). Plaintiff leaves the house one to two times a week. He drives to the grocery store weekly and to book stores and medical appointments (Tr. 137-138,360-361). He goes out to dinner with his mother once a week (Tr. 185).

Mr. Isaacs left his last job as a photo processor in October of 2001 for "reasons other than his condition," which he has described as long hours, transportation problems, stress, extreme difficulty working with others, and problems understanding and remembering directions (Tr. 100-101,116). He testified he cannot work because he is unable to handle the stress of a work environment and of associating with co-workers and employers. He becomes angry and frustrated. He experiences anxiety every few days. Plaintiff worked at his last job for three days (Tr. 357-358).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act

also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines

whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th

Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432,

433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

At step one, the ALJ found plaintiff did not engage in substantial gainful activity after he applied for benefits on June 27, 2005 (Tr. 24). At steps two and three, ALJ Gaughen found Mr. Isaacs suffers from degenerative disc disease (DDD), hypertension under varying control, and a history of depression and personality disorder, impairments that are severe but which do not alone or combination meet or medically equal a Listed impairment (Tr. 24-29). The ALJ found plaintiff less than completely credible (Tr. 30). At step four, here found because plaintiff's past work does not rise to the level of substantial gainful activity, Mr. Isaacs has no past relevant work (Tr. 31). At step five, relying on a vocational expert, the ALJ found plaintiff could perform other jobs such as kitchen helper, store laborer, and machine packager (Tr. 32). Because the ALJ Gaughen found Mr. Isaacs could perform other work, plaintiff is not disabled as defined by the Social Security Act (Tr. 32-33).

///

## ISSUES

Mr. Isaacs alleges the ALJ erred when he weighed the evidence of mental impairment.[1] This led to an RFC that failed to include

---

[1] Plaintiff's opening brief asserts he "believes he is much more limited both from a psychological and physical

all plaintiff's mental limitations (Ct. Rec. 11 at 11-18, 17 at 1-5). The Commissioner responds the Court should affirm the decision because it is supported by the evidence and free of error (Ct. Rec. 16 at 17).

**DISCUSSION**

**A. Weighing medical evidence - standards**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747,

---

standpoint" than assessed by the ALJ. He offers nothing supporting the physical limitation argument (Ct. Rec. 11 at 12). Plaintiff's reply brief similarly lacks any argument the ALJ's assessed physical limitations are erroneous (Ct. Rec. 17 at 1-5). Accordingly, the Court deems the argument waived. The appeal is limited to a review of the evidence of psychological limitation.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                      - 8 -

751 (9th Cir. 1989)(citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1995). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

**B. Treating and examining opinions**

Plaintiff alleges the ALJ erred when he weighed the conflicting opinions of treating and examining professionals, including Gregory Charboneau, Ed.D. (examining 2004), Brooke Sjostrom, M.A., and Mahlon Dalley, Ph.D. (examining 2005, 2006, 2007 and 2009), Daniel Dami, Ph.D., PAC (treating March 2005 through May 2007), Michelle McAlpin, M.S. (treating and examining 2006), Joyce Everhart, Ph.D. (examining 2006), and Sean Caldwell,

1  M.S. candidate and Kayleen Islam-Zwart, Ph.D. (examining 2006)(Ct.
2  Rec. 11 at 12-18).
3       The ALJ considered Dr. Charboneau's contradicted opinion
4  following an exam on July 9, 2004 (about eleven months before
5  onset)(Tr. 24-25,31; opinion at Tr. 207,276). Dr. Charboneau gave
6  plaintiff a questionnaire for Asperger's Syndrome [designed for
7  children] and conducted a 90 minute interview. He  diagnosed major
8  depressive disorder, single episode, unspecified, Asperger's
9  Syndrome, and assessed a GAF of 62 (Tr. 207-217, 276). Dr.
10 Charboneau opined plaintiff

> appears to be of above-average general intelligence
> who may be able to reason, understand, and remember
> basic and simplified information commonly exchanged
> in a work environment. However, his disorders will
> limit his ability to seek or maintain employment in
> a competitive job market.

(Tr. 276).

    The ALJ considered the contradicted opinion of Abigail
Osborne-Elmer, M.S. and Dr. Dalley following their GAU exam on
March 22, 2007 (Tr. 27, referring to Tr. 142-150). The ALJ
observes

> No changes in diagnosis or global assessment of
> functioning were noted since the previous exam
> [by Osborne, Caldwell, and Dr. Zwart on May 10,
> 2006 at Tr. 151-160, duplicated at 282-291].
> Marked limitations in social factors were noted.
> It was opined that due to the chronic nature of
> his condition and the lack of gainful employment,
> his mood and personality disorder would not improve
> in the next 12 months and placement on the SSI track
> was recommended. (Exhibit 1F/2-10)

(Tr. 27).

    The ALJ is correct. In 2006 and 2007 the GAU examiners
diagnosed major depressive disorder (recurrent, moderate) and
schizoid personality disorder, with a current GAF of 53 (Tr.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 10 -

143,148,283,289).

The ALJ gave several reasons for rejecting the opinions of the GAU examiners and accepting instead some of the contradicted opinions of examining psychologist Dr. Everhart and of treating professionals (Tr. 26-27, 30-31, referring to Tr. 181-187). The ALJ opined the findings following the GAU exams are unsupported by "reference to standardized testing," the GAU reports are from non-treating sources, and they are inconsistent with Dr. Everhart's more detailed report (Tr. 31).

In her March of 2006 report, Dr. Everhart diagnosed major depression (recurrent, mild to moderate, somewhat controlled with medication), anxiety disorder NOS (currently severe) and personality disorder NOS with avoidant features. She opined plaintiff's current and highest GAF in the past year was 55-60 (Tr. 186).

Prior to offering a diagnosis, Dr. Everhart reviewed (1) the March 2005 report by Sjostrom and Dalley, indicating results of Trails and MMPI-2 testing; (2) the July 2004 report by Dr. Charboneau, noting plaintiff was given the "Australian Scale for Asperger's Syndrome, a questionnaire by Garnett & Atwood," without listing numerical results, and (3) an October 2005 report by plaintiff's mother (Tr. 181-182). Dr. Everhart noted Mr. Isaac has no history of psychiatric hospitalization, says his problems are caused by stress, and is currently seeing a counselor in Spokane he thinks is helpful "but not enough"; similarly, plaintiff feels medication for depression is not working (Tr. 181).

From Dr. Everhart's report alone it is clear the ALJ erred in rejecting the GAU reports as unsupported by reference to

standardized testing, since she observes Sjostrom and Malley's March of 2005 report contains results of Trails A and B and MMPI-2 testing. Plaintiff is correct that this reason is not supported by the record. However, the error is harmless. An error is harmless when correcting it would not alter the result. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995). In light of the ALJ's other specific, legitimate and fully supported reasons, and rest of the record, the court believes correcting this error would not change the result.

The ALJ correctly observes the GAU examiners are not treating sources. In context, the court views the ALJ's reason as indicating a preference for the opinions of the treating professionals [discussed below] over those of examiners, as required. *See e.g., Lester v. Chater*, 81 F.3d at 830. The ALJ is correct some of the treating source opinions and observations contradict the severe and marked limitations assessed by the GAU examiners.

The ALJ's third reason for preferring Dr. Everhart's report is its greater detail (Tr. 31). Plaintiff argues because Dr. Everhart gave plaintiff the Trails A and B and Hamilton Rating Scale for Depression, her exam was less thorough than those conducted by the GAU examiners because the latter performed more extensive objective testing (Ct. Rec. 11 at 16). Plaintiff is incorrect in that Dr. Everhart administered three additional tests noted by the ALJ: the Burns Anxiety Inventory, serial sevens, and spelling world backward (Tr. 26, referring to Tr. 184-187). It appears the GAU group gave plaintiff at most four tests, including the more extensive MMPI-2; they note plaintiff's responses gained

speed as they gave the same test multiple times (Tr. 14, 147, 156, 272, 287).

To aid in weighing the conflicting medical evidence, the ALJ assessed plaintiff's credibility (Tr. 30), an unchallenged finding. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ gave clear and convincing reasons for his unchallenged credibility assessment, including (1) testimony inconsistent with statements to health care professionals; (2) complaints unsupported by the evidence, and (3) activities

inconsistent with claimed limitations (Tr. 30).

Plaintiff testified he left his last job due to difficulties with people. He told Dr. Everhart he quit because it was impossible to get any rest due to being in the darkroom 12 hours a day. The ALJ's reason is supported by the record (Tr. 30, referring to Tr. 183).

Plaintiff testified he has problems with concentration. The ALJ observes psychiatric testing shows concentration, attention and intellectual ability are within normal limits (Tr. 30; Tr. 187, 207). ALJ Gaughen opines plaintiff's claims of impaired concentration are undermined by spending hours at a time playing computer games, indicating good concentration (Tr. 30; 272).

Each reason is clear, convincing and supported by substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities). While an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence, it is a proper factor to consider. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)(en banc).

In assessing the conflicting evidence the ALJ observes opinions vary as to the limiting effects of depression and social impairment (Tr. 31). Dr. Everhart assessed a GAF of 55-60 in 2006, indicating moderate symptoms or difficulty (Tr. 271). In August 2004, well before onset, Dr. Charboneau assessed a GAF of 62 indicative of only mild to moderate symptomology or impairment of functioning (Tr. 207). As noted, in 2005, Dr. Dalley assessed a GAF of 50 when plaintiff took no medication (Tr. 274).

1      The ALJ points out treating sources indicate plaintiff's
depressive symptoms have improved with medication (Tr. 30). In
February of 2004 (sixteen months before onset) Mr. Isaacs reported
he stopped taking his medication in July, and had depressive
symptoms one week later (Tr. 253). It appears these symptoms did
not cause plaintiff to seek medication until seven months later.
Unexplained reasons for failing to seek medical care cast doubt on
a claimant's subjective complaints. 20 C.F.R.
§§ 404.1530,426.930; *Fair v. Bowen*, 885 F.2d 597,603 (9th Cir.
1989).

       In April of 2003 plaintiff told Julie Ponti, PAC, he was on
prozac in the past and it was the best. He was "most bothered by
not wanting to do anything," and "this was much improved by the
prozac" (Tr. 259).

       When evaluated by Dr. Dalley in March of 2005 (3 months
before onset), plaintiff reported he took no psychotropic
medication and was not in mental health treatment (Tr. 272, 275).
Dr. Dalley assessed a GAF of 50 (Tr. 274). Even so, Dr. Dalley
expected plaintiff's marked and moderate impairments would last no
more than six months and that when symptoms stabilized (i.e., with
medication) plaintiff may be able to tolerate the pressures and
expectations of a work environment requiring minimal contact with
others (Tr. 270, 275).

       Treating Dr. Dami opined with Dr. Dalley's March 2005
diagnosis it would be somewhat difficult for plaintiff to gain and
keep employment "although he did do pretty well with prozac in the
past" (Tr. 224). He disagreed with assessed schizoid personality
disorder but agreed there could be early signs (Id; Tr. 25). Dr.

Dami began plaintiff's prozac prescription again on June 8, 2005, three weeks before onset (Tr. 224).

Dr. Islam-Zwart's May 2006 report is internally inconsistent. She indicates plaintiff is not currently taking medications (Tr. 284) and takes prozac and cymbalta for depression he thinks is "ineffective" (Tr. 287). In June of 2006, treating Dr. Dami notes plaintiff is doing pretty well only taking prozac (Tr. 304); in March of 2007, "doing quite well" (Tr. 314), and, on May 21, 2007, plaintiff "feels he's doing well" (Tr. 318).

The ALJ observes Dr. Dalley's 2005 report apparently defines "marked limitations" differently from the Social Security Administration. Dr. Dalley opined mental health and medication intervention would likely restore plaintiff's ability to work in an environment requiring minimal contact with others (Tr. 270, 275); this was equated to *marked limitations* in social functioning (Tr. 25, referring to Exhibit 1F/127-135)(emphasis added).

This is another specific, legitimate reason supporting the weight the ALJ gave Dr. Dalley's opinion.

*RFC*

The ALJ's RFC included the following mental limitation:

"He can't do higher level or sophisticated social interaction either with co-workers in a leadership type or management role or with the retail public. But perfunctory social interaction can be accomplished without any significant problem or limitation." (Tr. 380).

The VE noted the limitation "concerning higher level social interaction," and indicated she named jobs with "a focus on

working with things" more than working with people (Tr. 381).

In the court's view the assessed RFC is supported by the record. To the extent the ALJ rejected the contradicted opinions of some of the examining psychologists, his reasons are legitimate, specific, and supported by substantial evidence in the record. *See Lester v. Chater*, 81 F.3d at 830-831 (holding that the ALJ must make findings setting forth specific, legitimate reasons for rejecting the treating physician's contradicted opinion).

As noted, Mr. Isaacs has the concentration to play computer games, check internet sites daily, send text messages, read, watch television and drive (Tr. 107,109-110,133,136-137,185,360-361). He is able to shop for groceries weekly, dine out with his mother once a week, and go to bookstores (Tr. 106,109-110,136,360). He completes activities of daily living including laundry and making simple meals (Tr. 108-109,133,135).

The evidence of grooming conflicts. The ALJ observes (1) Dr. Everhart describes grooming as fair; (2) hygiene is inadequate (Sjostrom & Dalley, 3/05 at Tr. 271), and (3) hygiene is adequate (examining physician Robert Rose, M.D., 3/08)(Tr. 25-26, 28).

The trier of fact, and not the reviewing court, must resolve conflicts in the evidence and, if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ appropriately relied on the record as a whole when assessing plaintiff's RFC, including noting plaintiff's lack of compliance and follow through with taking medication for depression and high blood pressure, as well the efficacy of

1  medication when taken properly (Tr. 24-28, citing treatment
2  records from 2003-August 2007). As noted, noncompliance with
3  medical care or unexplained or inadequately explained reasons for
4  failing to seek medical treatment cast doubt on a claimant's
5  subjective complaints. 20 CFR §§ 404.1530,426.930; *Fair v. Bowen*,
6  885 F.2d at 603. Impairments that can be effectively controlled
7  with medication are not disabling for the purpose of determining
8  eligibility for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439
9  F.3d 1001, 1006 (9th Cir. 2006).

10       Although he assessed social limitations, the ALJ observes
11 plaintiff has said he lost touch with friends or they moved away
12 (Tr. 25, referring to Exhibit 1F/127-135), perhaps indicating a
13 higher degree of socialization than Mr. Isaacs has generally
14 presented. The ALJ's RFC and question to the VE appear to
15 adequately take plaintiff's social limitations into account.

16       Plaintiff's argument the ALJ erred by failing to include Dr.
17 Everhart's assessed limitations of "low persistence," great
18 difficulty dealing with the public, and difficulty dealing with
19 co-workers in his hypothetical (Ct. Rec. 11 at 16) is unsupported
20 by the record. The ALJ specifically limited plaintiff to
21 perfunctory social interaction (Tr. 380). With respect to Dr.
22 Everhart's assessed low persistence due to "anxiety and history of
23 depression," the ALJ notes she opined plaintiff has the ability to
24 complete one or two-step tasks of a repetitive nature, complex
25 multi step tasks, and his pace was good (Tr. 27). It appears Dr.
26 Everhart relied at least in part on plaintiff's responses to the
27 Burns Anxiety Inventory when she diagnosed anxiety disorder NOS,
28 currently severe (Tr. 26,186). The ALJ was not required to credit

opinions based on plaintiff's unreliable self-reporting. *Bayliss v. Barnhart*, 427 F.3d 1211,1216 (9th Cir. 2005).

The record contains an opinion by examining psychologists Ms. Sjostrom and Dr. Dalley dated four months after the ALJ's adverse decision (Tr. 9-17). This opinion is of minimal probative value and does not compel a different result. After-the-fact psychiatric diagnoses are notoriously unreliable. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

The ALJ's assessment of the evidence of mental limitation is supported by the record and free of harmful legal error.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 10)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 15th day of June, 2010.

s/ James P. Hutton

JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE